## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **SHARON CAREY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 13-CV-0326-CVE-FHM** |
| | ) | |
| **AVIS BUDGET CAR RENTAL, LLC, PAUL** | ) | |
| **DOMINY, PAULA GOTTES, MARY JO** | ) | |
| **SHANNON, DEBBIE HALL, KIM** | ) | |
| **THORNE, DAVID POLEN, and** | ) | |
| **DEBRA WATKINS.** | ) | |
| | ) | |
| **Defendants.** | ) | |

### OPINION AND ORDER

Now before the Court are defendant Avis Budget Car Rental, LLC's Motion to Dismiss Plaintiff's Claims and Brief in Support (Dkt. # 13) and Defendants Paul Dominy, Paula Gottes, Mary Jo Shannon, Debbie Hall, Kim Thorne, David Polen, and Debra Watkins' Motion to Dismiss Plaintiff's Claims and Brief in Support (Dkt. # 14). Defendants argue that plaintiff has failed to state a claim upon which relief can be granted.

Defendants' motions to dismiss were filed on June 28, 2013. Plaintiff's responses to both motions were due July 19, 2013. On July 30, 2013, the Court advised plaintiff that she had failed to timely respond and ordered plaintiff to respond by August 2, 2013.[1] Dkt. # 22. On August 6, 2013, plaintiff filed a response entitled "My Pleaded Petition[.]" Dkt. # 23. Defendants replied. Dkt. ## 24, 25.

---

[1]     In that order, plaintiff was advised that, even if she failed to respond, all allegations in her complaint would be construed in a light most favorable to plaintiff. Dkt. # 22, at 1.

**I.**

Plaintiff's complaint is not a model of clarity.  Plaintiff, appearing pro se, filed a two-page complaint alleging retaliation, discrimination based upon her race, age, and disability, and claims of "mind anguish," and she asserted all claims against all defendants.  Plaintiff's disabilities included back pain and hearing impairment.  Plaintiff asserted that she was "being retaliated against for [her] past [Equal Employment Opportunity Commission (EEOC)] [and] Human Rights Department filings and internal complaint with [the Occupational Safety and Health Administration (OSHA)]. [She] was wrongfully discharged on March 21, 2012 based on racial discrimination [and] disability factors."  Dkt. # 1, at 1.

Plaintiff attached to her complaint thirty-four pages of documents, including: photocopies of book and magazine covers, including a "Guns & Ammo" magazine cover and a February 2012 article regarding guns (id. at 19-22); discipline reports generated by Avis Budget Car Rental, LLC (Avis), dated July 20, 2011 and March 21, 2012 (id. at 23-24, 26); handwritten notes regarding the discipline reports (id. at 24-26); an employee comments form filled out by plaintiff regarding the discipline reports (id. at 27-28); an Equal Employment Opportunity Commission (EEOC) intake questionnaire, dated March 26, 2012 (id. at 15-18, 29-32); a letter from the EEOC, dated May 1, 2012, noting that plaintiff had filed a charge against Avis for violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, et seq., and the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623, et seq. (id. at 11-12); a charge of discrimination with the EEOC and Oklahoma Human Rights Commission (OHRC), dated June 15, 2012 (id. at 13-14);  a dismissal and notice of rights form from the EEOC, dated April 9, 2013 (id. at 3-4); documentation from Prudential in 2012 and 2013(id. at

35-36); letter from Prudential regarding a miscommunication "on Prudential's part" regarding plaintiff's pension plan, dated May 21, 2013 (id. at 33-34); and handwritten notes, dated June 4, 2013 (id. at 5-10).

The following facts alleged in plaintiff's complaint are taken as true for the purposes of the motions to dismiss.  Plaintiff was involved in an automobile accident in 1988[2] that resulted in chronic whiplash injuries. Id. at 2.  In 2009, plaintiff requested accommodation for her disability resulting from those injuries, and she specifically requested reasonable seating (id.), but plaintiff was placed in "a hard chair near a window with outside high traffic and hallway noisy traffic [and] high-covered booth."  Id.  The seat was so hard that plaintiff had to use two "pillows."  Id.

"Gun [b]ooks [and] [g]un magazines" were placed in the locker room where plaintiff ate lunch.  Id.  Those books and magazines caused plaintiff to be afraid to sit in the hard chair and high-covered booth that were provided as her new "seating area."  Id.  Pictures were taken of plaintiff by Mary Jo Shannon, and the photographs were not shown to plaintiff.  Id.  Plaintiff's "instincts" told her that Shannon "gave them to a hitman."  Id.  That belief was based, at least in part, on the gun books, which "spoke of murder, death, hitman [sic] and assassination."  Id.  Plaintiff did not receive training in certain programs and was discriminated against "in monitor scores with cheating percentages."  Id.  Plaintiff also did not receive a "Compliment letter[.]"  Id.

Plaintiff requested back pay "for cheated Early Retirement Pension [and] Quotes."  Id. (emphasis in original).  She also requested back pay or lost vacation because of her termination, damages based upon her pain and suffering caused by sitting in the hard chair, and damages for her

_____

[2]       There is a discrepancy as to the date of the automobile accident (Dkt. # 1, at 2, 13); however, the date is unrelated to the issues here.

"mind anguish" resulting from viewing the gun books and gun magazines.  Id.  Plaintiff was sent by her guardian angel to file this case.  Id.

In her response to the dismissal motions, plaintiff elaborated on the basis for her claims. Plaintiff stated that she received the "letter requesting [her] to respond" on August 6, and that she thought an attorney planned to "take [her] case."  Dkt. # 23, at 1.  However, once she received the attorney's letter stating that the attorney "did not have the correct license to defend the case[,]"[3] she "was depressed and faced medical issues."  Id.  Plaintiff stated that she requested her file from the EEOC, and her filed contained "nothing but lies and racism."  Id. (emphasis in original).  The lies and racism left her "in tears," and plaintiff contacted the EEOC to inform them of "what [she] found in the report" about her co-workers.  Id.  The person she spoke with at the EEOC told plaintiff that the "case might have to be re-opened."  Id.  Thus, plaintiff stated that she is "trying to find an attorney that can tell [her] if [that] would be the correct way or leave everything 'as is' and let [her] attorney (when [she] finds one) bring those issues before the Judge."  Id.

Plaintiff further asserted that she began working for Avis in 1983, and she worked in the early morning hours.  Id.  Plaintiff stated that, when she arrived at work early in the morning, the "screen would show KKK."  Id.  Plaintiff had "previous death threat books that [were] placed at [her] desk back in the 90s, while [she was] still working for the company."  Id.  Plaintiff stated that those issues were "reported and resolved," but that they "affected [her] mind."  Id.  Plaintiff alerted OSHA and was told that, "had [plaintiff] informed [the] agency in time - they would have

---

[3]     Attached to plaintiff's response is a letter from Clifton Baker, dated July 15, 2013, which states that he reviewed plaintiff's materials with his law partner, Mark Mitchell, and found that, based upon their case load and time involved in plaintiff's case, he had to decline to represent plaintiff.  Dkt. # 23, at 3.

investigated [that] issue." <u>Id.</u> at 2.  Plaintiff is on "medications for those books and magazines." <u>Id.</u>  In addition, Debbie Hall took a "screen-shot" of plaintiff, which Hall thereafter showed to the EEOC, and that affected plaintiff's mind.  <u>Id.</u>

Plaintiff stated that she was terminated for "being on google - when work was slow[,] but other agents zoomed their google surrounding [her] desk and did not get terminated." <u>Id.</u>  Plaintiff stated that the EEOC "did not investigate the case fairly."  <u>Id.</u>

## II.

In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must determine whether the claimant has stated a claim upon which relief can be granted.  A motion to dismiss is properly granted when a complaint provides no "more than labels and conclusions, and a formulaic recitation of the elements of the a cause of action." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007).  A complaint must contain enough "facts to state a claim to relief that is plausible on its face" and the factual allegations "must be enough to raise a right to relief above the speculative level." <u>Id.</u>  "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." <u>Id.</u> at 562.  Although decided within an antitrust context, <u>Twombly</u> "expounded the pleading standard for all civil actions." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 684 (2009).  For the purpose of making the dismissal determination, a court must accept all the well-pleaded allegations in the light most favorable to the claimant.  <u>Twombly</u>, 550 U.S. at 555; <u>Alvarado v. KOB-TV, LLC</u>, 493 F.3d 1210, 1215 (10th Cir. 2002).  However, a court need not accept as true those allegations that are conclusory in nature. <u>Erikson v. Pawnee County Bd. Of County Comm'rs</u>, 263 F.3d 1151, 1154-55 (10th Cir. 2001).  "[C]onclusory

allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." Hall v. Bellmon, 935 F.2d 1106, 1109-12 (10th Cir. 1991).

"Generally, a court considers only the content of the complaint when ruling on a 12(b)(6) motion." Berneike v. Citimortgage, Inc., 708 F.3d 1141, 1146 (10th Cir. 2013) (citing Gee v. Pacheco, 627 F.3d 1178, 1186 (10th Cir. 2010)).  However, when reviewing a motion to dismiss under Rule 12(b)(6), a district court may "consider documents referred to in the complaint if the documents are central to the plaintiff's claims and the parties do not dispute the documents' authenticity." Jacobsen v. Deseret Book Co., 287 F.3d 936, 941 (10th Cir. 2002).

Complaints filed by pro se plaintiffs are held to less stringent standards than pleadings drafted by lawyers, and the court must construe them liberally.  Haines v. Kerner, 404 U.S. 519, 520 (1972).  Nevertheless, the court should not assume the role of advocate, and should dismiss claims which are supported only by vague and conclusory allegations.  Hall, 935 F.2d at 1110. Moreover, even pro se plaintiffs are required to comply with the "fundamental requirements of the Federal Rules of Civil Procedure." Ogden v. San Juan Cnty., 32 F.3d 452, 455 (10th Cir.1994).

### III.

Reading plaintiff's complaint and attached documents in a light most favorable to plaintiff, it appears that plaintiff is raising several claims against all defendants: discrimination based on race; discrimination based on age; discrimination based on her disabilities; retaliation for her internal complaints and claims to the EEOC, OHRC, and OSHA; retaliation based on a miscalculation of her pension; and a claim for "mind anguish."

Defendants' arguments can best be aggregated into five bases for dismissal.[4]  First, plaintiff improperly named individuals in her claims under Title VII, the ADA, and the ADEA.  Second, plaintiff's claims based on "mind anguish" should be dismissed for failure to state a claim upon which relief can be granted.  Third, plaintiff's claims based on the ADA and retaliation for her internal complaints and filings with the agencies should be dismissed because plaintiff failed to exhaust her administrative remedies and the court therefore lacks jurisdiction, or, in the alternative, plaintiff failed to state a claim upon which relief can be granted.  Fourth, plaintiff's claims of discrimination based on age and race should be dismissed for failure to state a claim upon which relief can be granted.  Fifth, any alleged miscalculation of her pension benefits does not support a claim for retaliation.[5]

## A.

Defendants argue that plaintiff cannot bring suit against individuals.  Plaintiff asserted all of her claims against Avis, Paul Dominy, Paula Gottes, Mary Jo Shannon, Debbie Hall, David Polen, Debra Watkins, and Kim Thorne.  Dkt. # 1, at 1.  In her complaint, plaintiff stated that Shannon was her manager, and Shannon placed her in the seating area where plaintiff was afraid to sit because

---

[4]     Defendants generally raise three challenges to the complaint: plaintiff cannot assert claims against the individuals; plaintiff failed to exhaust her administrative remedies; and plaintiff cannot state a claim upon which relief can be granted as to all possible claims.  Dkt. ## 13, 14.  In its motion to dismiss, Avis also asserted that any alleged pension miscalculation had been resolved and could not form the basis for a claim of retaliation.  Dkt. # 14.  Avis further argued that plaintiff be ordered, pursuant to Fed. R. Civ. P. 12(e), to cure the defects in her complaint to more definitely identify the factual bases for her claims.  Id. at 7.

[5]     Plaintiff may be asserting several retaliation arguments.  First, plaintiff asserted that she was being retaliated against for her filings with the EEOC, OHRC, and internal complaints or complaints to OSHA.  Second, plaintiff also asserted that the change in benefit amount of her Prudential policy was due to retaliation for those same filings.  These arguments will be addressed separately.

of the gun books and magazines.  Id. at 2.  Plaintiff also asserted that Debbie Hall and Kim Thorne "discriminated against [her] in monitor scores with cheating percentages[.]" Id.  Plaintiff stated that Hall was her supervisor, and Hall "never rewarded" plaintiff.  Id.  The remainder of the individual defendants are not mentioned in the complaint; however, some defendants are mentioned briefly in the attached documents.

For example, in the charge of discrimination, plaintiff stated that "Paula Gottes, Human Resources, informed [plaintiff] [she] was discharged[.]" Id. at 14.  Additionally, in plaintiff's EEOC questionnaire, plaintiff listed "Kim Thorpe," among others, as a person who was treated better than plaintiff.  Id. at 16.  Plaintiff also stated that Gottes, Hall, David Polen, and Shannon were responsible for her "early" termination.  Id. at 30.  In 2009, plaintiff asked Debra Watkins for reasonable accommodation for her disabilities.  Id.  Gottes signed, as plaintiff's supervisor, the discipline action report (id. at 23) that stated that plaintiff was terminated based on plaintiff's violation of work standards, including "restricting productive output" by disconnecting inbound customer calls.  Id.

There is "long-standing [Tenth Circuit] precedent" finding "supervisors and other employees may not be held personally liable under Title VII." Taylor v. Riverside Behavioral Health, 2011 WL 1528791, *3 (N.D. Okla. 2011).  In other words, the Tenth Circuit has interpreted Title VII restrictions to apply to the employer only, and not to individual employees.  "The relief granted under Title VII is against the *employer,* not individual employees whose actions would constitute a violation of the Act." Haynes v. Williams, 88 F.3d 898, 899 (10th Cir.1996) (emphasis in original). Further, the definition of "employer" is similar among Title VII, the ADA, and the ADEA.  Butler v. City of Prairie Village, 172 F.3d 736, 744 (10th Cir. 1999) ("[W]e now hold that the ADA

8

precludes personal capacity suits against individuals who do not otherwise qualify as employers under the statutory definition.  Not only is our position consistent with the majority of federal circuit and district courts that have considered the issue of individual supervisor liability under Title VII and the ADEA, . . . but it is also in accordance with the only circuit courts that have directly addressed the issue of individual liability under the ADA.") (citations omitted); see Mason v. Stallings, 82 F.3d 1007, 1009 (11th Cir. 1996) ("The definition of 'employer' in the Disabilities Act is like the definitions in Title VII of the 1994 Civil Rights Act, 42 U.S.C. § 2000e(b), and in the Age Discrimination in Employment Act, 29 U.S.C. §630(b) . . . [T]here is no individual responsibility under either of those Acts."); see also 42 U.S.C. § 12111(5)(A).

The term "employer" means, "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person . . ." 42 U.S.C.A. § 2000e(b).[6] Individual defendants do not qualify as "employers" under the statutory definition and are not subject to suit under Title VII, the ADA, or the ADEA.  See Lee v. Sony BMG Music Entm't, Inc., 557 F. Supp. 2d 418 (S.D.N.Y 2008); see also Haltek v. Village of Park Forest, 864 F. Supp. 802 (N.D. Ill. 1994).  Therefore, the Court finds that all of plaintiff's claims based on those statutes against individual defendants should be dismissed.

---

[6]    Under the ADA, "[e]mployer is defined as "a person engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year, and any agent of such person, except that, for two years following the effective date of this subchapter, an employer means a person engaged in an industry affecting commerce who has 25 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding year, and any agent of such person."  42 U.S.C. § 12111(5)(A).

**B.**

Plaintiff alleges that she suffered "mind anguish" from viewing the gun magazines and the novel that were placed in the locker room. Dkt. # 1, at 2.  She also feared for her life because Shannon took unauthorized photos of her, and plaintiff's "instincts tell [plaintiff] she gave them to a hitman."  Id.  Although plaintiff's claim is against all defendants, plaintiff does not specifically name any actors other than Shannon.  Construing the evidence in a light most favorable to plaintiff, plaintiff's claims of "mind anguish" are most closely akin to a claim of intentional infliction of emotional distress.

Oklahoma courts have recognized a cause of action for intentional infliction of emotional distress, also known as the tort of outrage.  See Gaylord Entm't Co. v. Thompson, 958 P.2d 128, 149 (Okla. 1998).  The action is governed by the narrow standards laid out in the Restatement Second of Torts, § 46.  Id.  In Breeden v. League Servs. Corp., 575 P.2d 1374 (Okla. 1978), the Oklahoma Supreme Court explained:

> Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.  Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'  The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.

Id. at 1376.  To state a claim, a plaintiff must allege that "(1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's conduct caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe."  Schovanec v. Archdiocese of Oklahoma City, 188 P.3d 158, 175 (Okla. 2008) (quoting Computer Publ'ns, Inc. v. Welton, 49 P.3d 732, 735 (Okla. 2002)).  Under Oklahoma law, the trial court must

assume a "gatekeeper role" and make an initial determination that the defendant's conduct "may be reasonably regarded as sufficiently extreme and outrageous to meet the Restatement § 46 standards." Trentadue v. United States, 397 F.3d 840, 856 n.7 (10th Cir. 2005) (applying Oklahoma law).  If reasonable persons could reach differing conclusions in the assessment of the disputed facts, the Court should submit the claim to a jury to determine whether the defendant's conduct could result in liability.  Id.  The Court is to make a similar threshold determination with regard to the fourth prong, the presence of severe emotional distress.  Id.

In cases arising out of the workplace, Oklahoma appellate courts have found that a defendant is engaged in extreme and outrageous conduct only when the defendant intentionally and persistently engaged in a course of conduct that harmed the plaintiff.  See Computer Publ'ns, 49 P.3d at 736 (claim should have been submitted to a jury when plaintiff presented evidence that harassment lasted more than two years and caused plaintiff to quit her job, move, and repeatedly change phone numbers); Miner v. Mid-America Door Co., 68 P.3d 212 (Okla. Civ. App. 2000); (noting that workplace harassment rarely rises to the level of extreme and outrageous conduct); Mirzaie v. Smith Cogeneration, Inc., 962 P.2d 678 (Okla. Civ. App. 1998) (employer's conduct was not extreme and outrageous when, inter alia, the plaintiff's manager made derogatory sexual remarks about the plaintiff, woke plaintiff up in the middle of the night to do unnecessary work, and terminated him two hours before his wedding); Zahorsky v. Cmty. Nat'l Bank of Alva, 883 P.2d 198 (Okla. Civ. App. 1994) (employer not liable for intentional infliction of emotional distress when an employee forced the plaintiff to have sex with him and employer failed to fire the employee, even though the employer allegedly knew about the conduct).

Plaintiff's allegations that defendants caused "mind anguish" as a result of the gun books and magazines present in the locker room; the photo taken of her; the failure to give plaintiff rewards or compliment letters; and the failure of her supervisor or manager to do other work-related functions, like provide screen-to-screen time, do not, taken as a whole, constitute extreme and outrageous conduct.  Workplace harassment rarely rises to the level of extreme and outrageous conduct, and plaintiff's allegations do not rise to the level of conduct that an Oklahoma appellate court has found extreme and outrageous in the workplace setting.  Thus, plaintiff has not stated a plausible claim of intentional infliction of emotional distress, and the Court finds that all claims against all defendants for "mind anguish" should be dismissed.

## C.

The only remaining claims are plaintiff's claims against Avis for disability discrimination, age discrimination, retaliation, and racial discrimination.  Avis asserts that, as to her claims of disability discrimination and retaliation, plaintiff has failed to exhaust her administrative remedies and the Court therefore lacks subject matter jurisdiction, or, in the alternative, and as to all other claims, plaintiff has failed to state a claim upon which relief can be granted.

"Exhaustion of administrative remedies is a 'jurisdictional prerequisite' to suit under Title VII." Jones v. Runyon, 91 F.3d 1398, 1399 (10th Cir. 1996) (internal quotation marks omitted); Wyatt v. Donahoe, 2011 WL 3626761, *2 (N.D. Okla. Aug. 17, 2011) ("In the Tenth Circuit, exhaustion of administrative remedies is a jurisdictional prerequisite to filing a Title VII action." (quoting Alcivar v. Wynne, 268 Fed. Appx. 749, 753 (10th Cir. 2008) (unpublished))).[7]  "[A]

---

[7]     This and all other unpublished opinions are not precedential but are cited for their persuasive value.  See Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

plaintiff normally may not bring a Title VII action based upon claims that were not part of a timely-filed EEOC charge for which the plaintiff has received a right-to-sue letter.  Simms v. Dep't of Mental Health & Substance Abuse Servs., 165 F.3d 1321, 1326 (10th Cir. 1999).  This also applies to claims under the ADEA and the ADA.  29 U.S.C. § 626(d)(1)(B); 42 U.S.C. § 12117(a); Castaldo v. Denver Public Schools, 276 Fed. Appx. 839, 841-42 (10th Cir. 2008) (unpublished). Thus, if a plaintiff did not exhaust her administrative remedies, a court does not have jurisdiction to consider those claims.

"The first step to exhaustion is the filing of a charge of discrimination with the EEOC." Jones v. United Parcel Serv., Inc., 502 F.3d 1176, 1183 (10th Cir. 2007); see 42 U.S.C. § 2000e-5(b).  For a charge to be timely in Oklahoma, the charge must be filed within 300 days of the last discriminatory act.  See id.; see also Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 109 (2002).  "[A]n employment-discrimination plaintiff must 'plead and show' exhaustion."  Pretlow v. Garrison, 420 Fed. Appx. 798, 802 (10th Cir. 2011) (unpublished).  Absent assertions or demonstrations of exhaustion in the pleadings, the complaint must be dismissed.

Further, "[w]hen a party brings a claim of retaliation in conjunction with a Title VII claim, the party asks the court to exercise ancillary jurisdiction[ ] over the retaliation claim."  Jones, 91 F.3d at 1402 (footnote omitted).  "Thus, a court has jurisdiction to hear an ancillary claim of retaliation only when the main administrative charge is properly before the court."  Id.  "While an ancillary claim of retaliation 'does not require that the plaintiff prevail on the underlying claim of discrimination,' . . . such a claim does require that the plaintiff satisfy all jurisdictional prerequisites with respect to the underlying claim of discrimination when . . . the retaliation claim suffers the

defect of non-exhaustion and jurisdiction is sought to be maintained as ancillary jurisdiction." Id. (citation and footnote omitted).

Plaintiff attached copies of an EEOC intake questionnaire, dated March 26, 2012 (Dkt. # 1, at 15, 29), a charge of discrimination, dated June 15, 2012 (id. at 13-14), and an EEOC dismissal and notice of rights, dated April 9, 2013 (id. at 3). In those documents, plaintiff alleged that Avis failed to provide a reasonable accommodation in 2009, that she complained to Avis in May 2011 and February 2012, that she received "disciplinary action" in July 2011, and that she was terminated March 21, 2012. See Dkt. # 1, at 23-24, 26. Plaintiff also asserted claims of race discrimination and age discrimination.

In her charge of discrimination, plaintiff stated

I.   I am being retaliated against for past complaints of discrimination with EEOC, OHRC and for my internal complaints. On or about May 10, 2011 I complained to HR about harassment. On June 13, 2011 I was notified by HR "after investigating my complaint they were not able to substantiate my claims of harassment".

In about 1999 due to a [sic] automobile accident I received medical impairment(s) which my employer has knowledge of. In 2009 I request [sic] accommodation for my medical impairments in that I be placed in a cubical on an end row so I could hear better and perform better instead I was placed in a high covered booth.

During my employment I was harassed by Debbie Hall, Supervisor in that she always had something negative to say to me. On about July 20 2011 I received a disciplinary action from Debbie Hall, Supervisor for unprofessional behavior. In this write-up it was alleged that I received prior discussions on 05/9/11, 06/27/11, 07/08/11 and 07/20/11. Nothing was never [sic] discussed with me on 05/09/11 & 06/27/11. On about February 1, 2012 I met with HR to discuss my concerns about Gun magazines and my fears and the effects it had on my mind. I was referred to contact Life Matters for therapy.

On about March 21, 2012 I was discharged from my position of Budget Truck Specialty Rep. I. Other co-workers not of my age or age [sic] are treated better than I was. I am 53 years of age and my date of birth is May

14

20, 1958.  I have been employed with the Company since about June 21, 1983.

II.    On about March 21, 2012, Paula Gottes, Human Resources, informed me I was discharged for Violation of Standards of Work Related Behavior specifically restricting productive output.

III.    I believe that I have been discriminated against because of my Race, Black, and Retaliated against in violation of Title VII of the Civil Rights Act of 1964, as amended, due to my Age, 53 yrs. in violation of the Age Discrimination In Employment Act of 1967, as amended and due to my Disability, in violation of the Americans With Disabilities Act of 1990, as amended.

Dkt. # 1, at 13-14.

## 1.

Documents attached to the complaint detail plaintiff's disabilities.  In reading the documents in the light most favorable to plaintiff, her disabilities include back and spine pain and impaired hearing.  See Dkt. # 1, at 1-2; 11-13.  Plaintiff was in a car accident that resulted in her disabilities. In 2009, plaintiff requested a reasonable accommodation,[8] including a "cubical on an end row[,]" so that she could hear better."  Id. at 13.  Plaintiff also requested "a headset that had one hearing device instead of 2 - because of [her] head muscle injuries."  Id. at 31.  Plaintiff was instead placed in a high covered booth with a hard chair.  Id. at 1-2, 13.  In addition, the new seating arrangement was "next to 2 Mexican Ladies who spoke Spanish Loudly [and] in a very uncomfortable seat to where [she] had to bring a sitting blanket [and] a back pillow for [her] spinal [sic]."  Id.  She claims she was discriminated against as a result of her disability.  Plaintiffs claims may also include a claim

---

[8]    Plaintiff also stated that she requested reasonable accommodations even earlier - - in 1999. Dkt. # 1, at 17.

of harassment under the ADA.  Avis argues that jurisdiction is lacking because plaintiff failed to exhaust all administrative remedies.

Plaintiff requested a reasonable accommodation in 2009.  Id. at 13-14, 31.  She filed a charge of discrimination with the EEOC and OHRC, at the earliest,[9] in March 2012.  See id. at 32. Therefore, it is clear that plaintiff's filings with the EEOC or OHRC fell far outside of the 300 day deadline that is required for timely filing.  Because plaintiff failed to exhaust her administrative remedies, plaintiff's claim of discrimination based on her disabilities is dismissed.

To the extent that plaintiff raises a claim of harassment under the ADA, Avis asserts that plaintiff failed to state a claim upon which relief can be granted.  Plaintiff alleges that she was harassed by Hall, her supervisor, because Hall "always" had something "negative" to say about plaintiff.  Dkt. # 1, at 13.  Additionally, on May 10, 2011, plaintiff alleges that she complained to human resources about harassment.  Id.  She received a disciplinary action on July 20, 2011; Hall alleged that she had numerous previous discussions with plaintiff regarding unprofessional behavior by plaintiff, but plaintiff alleges that two of those discussions never occurred.[10]  Id.  These are plaintiff's only factual allegations regarding harassment.  Plaintiff's other allegations regarding her disability relate to the failure of Avis to provide a reasonable accommodation - - instead providing seating in a hard chair near a noisy hallway.

---

[9]     See infra section C.2. for discussion of whether plaintiff's EEOC questionnaire was sufficient to satisfy the timing requirement.

[10]    It is worth noting that plaintiff's allegations of harassment only tangentially relate to her disability, if at all; however, in an effort to liberally construe plaintiff's pleadings, it is assumed that plaintiff is raising the claim of harassment due to her disability.  See Dkt. # 1, at 13-14.

16

Because language included in the ADA mirrors that of Title VII, the Tenth Circuit has concluded that "Congress intended for hostile work environment claims under the ADA to be governed by the same standard as that applied to similar claims under Title VII[.]" McClain v. Southwest Steel Co., Inc., 940 F. Supp. 295, 301 (N.D. Okla. 1996). Under Title VII, to assert a harassment or a hostile work environment claim, the plaintiff must prove that "the workplace [was] permeated with discriminatory intimidation, ridicule, and insult[ ] . . . that [was] sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment[.]" Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993) (internal quotation marks omitted); McClain, 940 F. Supp. at 301. The Supreme Court, regarding a Title VII claim, noted that "mere utterance of an . . . epithet which engenders offensive feelings in an employee[ ] . . . does not sufficiently affect the conditions of employment[.]" Harris, 510 U.S. at 21 (internal quotation marks omitted). "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment-an environment that a reasonable person would find hostile or abusive- is beyond Title VII's purview." Id.

The Court finds that, construing the allegations in plaintiff's complaint and attached documentation in the light most favorable to plaintiff, she has failed to state a claim for harassment under the ADA and her claim should therefore be dismissed.

## 2.

Plaintiff asserted that she is "being retaliated against for [her] past EEOC and Human Rights Department filings and internal complaint with OSHA." Dkt. # 1, at 1. As noted above, plaintiff filed claims with both the EEOC and OHRC before filing this case. However, even construing those filings in a light most favorable to plaintiff, she did not raise her claims of retaliation based on a

17

previous OSHA complaint; instead, plaintiff, in her charge of discrimination, asserted that she made "internal complaints." Dkt. # 1, at 13. Plaintiff "complained to HR about harassment" on May 10, 2011. Id. On July 20, 2011, plaintiff received a disciplinary action, in which "it was alleged that [plaintiff] received prior discussions on" May 9, June 27, July 8, and July 20, 2011. Id. However, plaintiff alleges that she did not have discussions with anyone on May 9 or June 27. Id. Thereafter, "[o]n about February 1, 2012[,] [plaintiff] met with HR to discuss [her] concerns about Gun magazines and [ ] fears and the effects it had on [her] mind." Id. Plaintiff also attached two "Discipline Action Report[s]" in which Avis detailed actions taken by plaintiff, such as ending calls with customers and "displaying unprofessional behavior in the workplace and with her management team." Id. at 23-24, 26-28. Plaintiff's charge of discrimination is dated June 15, 2012. Id. at 13.

Insofar as plaintiff's allegations relate to the disciplinary actions and discussions in 2011, those would fall outside of the 300-day window if it were measured from the date of plaintiff's charge of discrimination. However, the intake questionnaires she attached are dated March 26, 2012 (id. at 15-18, 29-32), and plaintiff's claims, insofar as they relate to the 2011 incidents, would therefore be timely if measured from the date of the questionnaire. A "questionnaire [may] satisf[y] the EEOC's minimum requirements for a charge." United Parcel Serv., 502 F.3d at 1183. "Under the relevant statutory provision, 42 U.S.C. § 2000e-5(b), the EEOC has broad discretion to determine the content and form of a charge." Id. at 1183-84. The Tenth Circuit has determined that, where a questionnaire clearly satisfied the minimum requirements for the content of a charge, because it identified the parties and described the actions or practices complained of, and met "the EEOC's formal requirements that a charge be written, signed, and verified[,]" a questionnaire may allow a plaintiff to fulfill "the filing requirement." Id. Thus, where a plaintiff "manifested an intent

to activate the administrative process[,]" a questionnaire may be sufficient to meet the timeliness requirements such that the plaintiff did not fail to exhaust her administrative remedies.  Id.

In this case, on the questionnaire, plaintiff checked "BOX 2[,]" which stated, "I want to file a charge of discrimination, and I authorize the EEOC to look into the discrimination I described above. . . ."  Dkt. # 1, at 18.  Therefore, plaintiff clearly manifested an intent to active the administrative process.  The Court finds that plaintiff did not fail to exhaust her administrative remedies as to her claims that she is being retaliated against based on her internal complaint in May 2011 and apparently resulting discussions in May through July 2011, as well as based on her filings with the OHRC or EEOC.  However, plaintiff stated, in the questionnaire, that she "filed with Tulsa Human Rights[,]" and referenced the "Human Rights Department[,]" but plaintiff does not reference a complaint to OSHA.  The Court finds that plaintiff failed to exhaust her administrative remedies as to retaliation based on a complaint to OSHA, and that claim should therefore be dismissed.

According to plaintiff, "[she] was wrongfully discharged on March 21, 2012 based on racial discrimination [and] disability factors."  Dkt. # 1, at 1.  However, in her attached documentation, it is clear that plaintiff filed a claim with the EEOC and OHRC after she was terminated, on March 26, 2012 (id. at 14-18, 29-32) and June 15, 2012 (id. at 13-14).  Thus, plaintiff cannot state a claim upon which relief can be granted for termination based on retaliation because she was terminated before she filed complaints with either the EEOC or OHRC.  Therefore, her termination cannot be in retaliation for her claims with either the EEOC or the OHRC.  The Court finds that plaintiff's claim that her termination or actions during her employment were in retaliation for her filings with the EEOC or OHRC is dismissed.

Construing her complaint and all attached documents in a light most favorable to plaintiff, the Court finds that, as a retaliation claim, plaintiff has stated only that she made internal complaints and was thereafter fired.  Plaintiff alleges that on about July 20, 2011, she received a "disciplinary action" for "unprofessional behavior."  Id. at 13.  Plaintiff's only support for her claim of retaliation based on her internal complaints, apparently made some time in May 2011 and February 2012, are plaintiff's own conclusory allegations.  Plaintiff simply stated that she complained and was thereafter terminated.  The Court need not accept conclusory allegations as true.  Erikson, 263 F.3d at 1154-55; Hall, 935 F.2d at 1109-12.  Thus, the Court finds that plaintiff has failed to state a claim upon which relief can be granted as to her retaliation claim based upon her internal complaints, and defendants' motions should be granted as to that claim.

### D.

Avis asserts that plaintiff's claims based on discrimination because of her race and age also fail to state a claim upon which relief can be granted.

### 1.

In her complaint, plaintiff alleges that she was wrongfully discharged based on racial discrimination. Dkt. # 1, at 1.  In her EEOC questionnaire, plaintiff stated that she "gave Tulsa HR Depart. Info based on [her] Race - but they backed out when [she] mentioned threats of guns."  Id. at 16.  Further, in the questionnaire and handwritten notes dated June 4, 2013, plaintiff stated that "[t]hese [gun books] did not occur [sic] until Sept. 2011 [and] January[,]" and "[t]hese books appeared right before Dr. Martin Luther King's Birthday."  Id. at 16, 9.  Plaintiff stated that she put in a request "not to work [on Martin Luther King, Jr's birthday] - but was forced to work by the Scheduling department."  Id. at 9-10.  On the OHRC questionnaire, plaintiff was asked to list the

20

race of all those persons who were treated either better or worse than she was.  Plaintiff did not list the race of each person but did note that people treated better than her included "[t]he whites and Mexican ladies [she] sat by."  Id. at 16.  She also noted, in the "Description of Treatment[,]" as to those treated better than her, that no one had taken action regarding the gun books plaintiff found offensive and that she had not received a customer's compliment letter.  Id.  As to those people treated worse than plaintiff, plaintiff stated the list included "only" her, and, although her "percentages have come up" the gun and crime books continued to "affect[ ] [her] mind - to where [she] feel[s] afraid eating there and afraid to go to [her] locker - knowing that there is a plot on [her] life."  Id. at 17.

However, in a second EEOC intake questionnaire that plaintiff also attached to her complaint, plaintiff named several co-workers who were treated better than her, who were all white, and stated that the "Description of Treatment," was that all her "White" co-workers were not terminated.  Id. at 30.  Plaintiff thereafter stated that she was denied the opportunity to listen to the tapes that formed the basis for her disciplinary actions and termination, was threatened with gun books, and was required to sit "by Mexican Ladies to who I could not hear [while] on the phone." Id. at 31.  Plaintiff also stated that, as to those persons who were treated the same as she was, those are "unknown" because it "seem[s] like [she] was the only one targeted [f]or [t]ermination."  Id.

Plaintiff continually referenced the gun books (see id. at 30-31) and the meetings that were never held regarding discipline actions taken against plaintiff because plaintiff disconnected inbound calls.  See id. at 24-28, 31.  Plaintiff alleges she was not allowed to listen to the recordings of the phone calls in which she disconnected customer calls.  Id.

Avis asserts that plaintiff has failed to state a claim upon which relief can be granted. "Although 'the 12(b)(6) standard does not require that [p]laintiff establish a prima facie case in her complaint, the elements of each alleged cause of action help to determine whether [p]laintiff has set forth a plausible claim.'" Townsend-Johnson v. Cleveland, 494 Fed. Appx. 833, 836 (10th Cir. 2012) (unpublished) (quoting Khalik v. United Air Lines, 671 F.3d 1188, 1192 (10th Cir. 2012)). "In racial discrimination suits, the elements of a plaintiff's case are the same whether that case is brought under §§ 1981 or 1983 or Title VII." Id. (quotation omitted). Plaintiff must demonstrate "(1) membership in a protected class, (2) adverse employment action, and (3) disparate treatment among similarly situated employees." Id. at 836-37 (quotation omitted).

Title VII prohibits discrimination on the basis of race, color, religion, sex or national origin, and a plaintiff can prevail by showing disparate treatment or disparate impact. Wards Cove Packing Co., Inc. v. Atonio, 490 U.S. 642, 645-46 (1989). Disparate treatment arises when an employer "treats some people less favorably than others because of their race, color, religion, sex or national origin" and "proof of discriminatory motive is critical." Carpenter v. Boeing, 456 F.3d 1183, 1187 (10th Cir. 2006) (quoting Int'l Bd. of Teamsters v. United States, 431 U.S. 324, 335 n.15 (1977)).

The Tenth Circuit, in Khalik, found that, although the circuit court knew that "plaintiff was Arab-American, [it] had no context for when the plaintiff complained of race discrimination or to whom." Townsend-Johnson, 494 Fed. Appx. at 837 (citing Khalik, 671 F.3d at 1194). "The plaintiff did not allege whether other Arab-Americans were treated differently and [the circuit court] had no allegation about how the defendant treated the plaintiff compared to other non-Arabic or non-Muslim employees." Id. (citing Khalik, 671 F.3d at 1194). In other words, "the complaint contained no facts relating to the alleged discrimination[,]" and the circuit court concluded that

"plaintiff's allegations were 'conclusory' and 'formulaic recitations' because the plaintiff in that case only made 'general assertions of discrimination and retaliation, without any details whatsoever of events leading up to [ ] termination.'" Id. (citing Khalik, 671 F.3d at 1193).

However, in Townsend-Johnson, the Tenth Circuit noted that plaintiff had "alleged plausible claims for relief." Id. Plaintiff "provided facts alleging she complained about race discrimination throughout the school year." Id. Further, plaintiff's allegations regarding "specific acts included [ ] comments regarding [p]laintiff's attire." Id. "The complaint allege[d] [p]laintiff complained to [d]efendant as well as to the Human Resources Division." Id. The Tenth Circuit noted that, "[i]mportantly, [p]laintiff allege[d] *all* non-female-African-American principals whose schools did not meet AYP goals had their contracts renewed for the next school year." Id. That allegation was "more than a mere legal conclusion[,]" and plaintiff did not "simply allege she was an African-American and fired." Id. Rather, the Tenth Circuit found that "she allege[d] the non-female-African-American principals in the school district who failed to meet their AYP goals were not terminated." Id. "Thus, [p]laintiff identified, in her complaint, a group of non-female-African-American employees who [d]efendant allegedly treated differently[,] [and] [p]laintiff [ ] sufficiently plead her claims for race discrimination. . . ." Id.

Looking solely to plaintiff's complaint, plaintiff did not provide any supporting allegations regarding her claim of race discrimination. She stated that she was terminated based on her race; however, she provided no allegations that anyone of another race was treated better, or worse, than she was. In her attached documentation, plaintiff asserted that those treated better than she was were "White[,]" but the only allegation she asserted is that those "White" employees were not terminated. Dkt. # 1, at 16. Plaintiff reiterated consistently that gun books were left in the locker room, which

made her fearful, and that she was either cheated out of work-related information, like a compliment letter from a customer, or scores.  Although plaintiff stated that the books "did not occur until Sept. 2011 [and] January[,]" id., that has no correlation to plaintiff's race.  Further, plaintiff's inability to secure a day off of work on a specific holiday, Martin Luther King, Jr.'s birthday, is also not support for a racial discrimination claim.  Plaintiff reportedly gave Avis' "HR" department information regarding her race, but plaintiff stated that the human resources department "backed out" when plaintiff "mentioned threats of guns."  Id.  Plaintiff did not allege any other details regarding her interaction with human resources and did not allege that she complained of racial discrimination but only that she gave human resources "[i]nfo[rmation] based on [her] [r]ace[.]" Id.

Although the Court reads plaintiff's filing, as a pro se plaintiff, liberally, the Court will not concoct arguments for plaintiff and need not accept conclusory allegations as true.  Therefore, the Court finds that plaintiff failed to state a claim upon which relief can be granted.

## 2.

Plaintiff asserted that she was discriminated against based on her age.  In support, plaintiff stated that she was 53 (Dkt. # 1, at 14), she was employed by Avis since 1983 (id.), and she was terminated on March 21, 2012 (id.).

Plaintiff's sole support for her claim of age discrimination is her age and that she was fired. On the EEOC questionnaire, plaintiff was asked to list the full name and "Race, Sex, Age, National Origin, Religion, or Disability" of persons who were either treated better or worse than she was.  Id. at 16-17.  Although plaintiff circled "Race" (id.) and "Disability" (id. at 16), she did not circle "Age[,]" and failed to list the age of any person who she believed was treated better or worse than she was.  Id. at 16-17.  Plaintiff stated, in her charge of discrimination, that "[o]ther co-workers not

24

of my age or age [sic] are treated better than I was." Id. at 14.  However, plaintiff fails to state

whether those co-workers were younger or older than plaintiff, and plaintiff gives no further detail.[11]

Therefore, the only factual support for plaintiff's claim of age discrimination is her own conclusory

allegation that she was terminated based on age, and plaintiff has failed to state a claim upon which

relief can be granted.

## E.

Defendants assert that any alleged miscalculation of plaintiff's pension benefits does not

support a claim for retaliation.  Construing plaintiff's complaint liberally, plaintiff is asserting that

the "miscalculation" of her pension benefits is in retaliation for her internal complaints or her claims

to OSHA, the OHRC, or the EEOC.  Plaintiff requested "[b]ack pay for cheated Early Retirement

Pensions and Quotes." Id. at 12. (emphasis plaintiff's). To her complaint, plaintiff attached several

pages of handwritten notes detailing her contacts with "Prudential Insurance Company of America

at 280 Turnbull Street, Hartford, CT." Id. at 5-10.  In those notes, plaintiff stated that she contacted

Prudential "numerous times after Avis . . . terminated [her] on March 21, 2012." Id. at 5.

"Prudential holds the pension packet for [Avis]." Id.  And, plaintiff "wanted to retire early at age

55." Id.  Prudential sent plaintiff a quote regarding her pension, but plaintiff thereafter called

Prudential several times, and was told to call back. Id.  Plaintiff detailed her calls to Prudential

representatives regarding why the amount she was quoted thereafter changed. Id. at 5-7.  Plaintiff

stated that she "believe[s] that because of [her] filing the past complaint with EEOC [ ] has caused

the Prudential Retirement Team to discriminate upon [her] requesting to retire early and retaliation

---

[11]     Persons covered under the ADEA are those "who are at least 40 years of age." Gomez-Perez
v. Potter, 553 U.S. 474, 489 (2008).  Thus, a person over 40 years of age is considered to be
part of the protected class.

based on [her] race and age." Id. at 7.  Plaintiff stated that, if there were changes in her pension plan, she should have been informed.  Id. at 8.

To her complaint, plaintiff attached a letter from Prudential, dated May 21, 2013, in which Prudential sent plaintiff "an estimate with a 06/01/2013 Annuity Starting Date with a Single Life Annuity of $357.62[,] [and] [o]n 4/11/2013 [Prudential] sent [plaintiff] final with a 06/01/2013 Annuity Starting Date with a Single Life Annuity of $226.34." Id. at 33.  Prudential stated that "[t]he reason for this discrepancy was due to the misunderstanding of the cause of termination." Id. Prudential explained that different factors are used depending on whether a termination is voluntary or involuntary, and that, in the first estimate, Prudential had used the favorable rating associated with a voluntary termination.  Id.  However, in the second, Prudential utilized a less favorable rating associated with an involuntary termination because Prudential learned that "the cause of termination was due to misconduct." Id.  Thus, "[a]fter corresponding with Avis, this was a miscommunication on Prudential's part." Id.

Avis asserts that any miscommunication was simply that - - a miscommunication, and was not in retaliation for any action plaintiff may have taken.  It appears that plaintiff is asserting that the change in the amount of her pension benefits was due to a retaliatory act by Avis, through Prudential, because plaintiff filed a charge with the EEOC, OHRC, or OSHA.

Under Title VII, it is unlawful for an employer to take any adverse action against an employee for filing a charge or reporting acts of alleged workplace discrimination.  42 U.S.C. § 2000e-3(a).  To prove a prima facie case of retaliation, plaintiff must show that: (1) she engaged in protected opposition to discrimination; (2) her employer took an adverse employment action against her; and (3) there is a causal connection between the opposition and the adverse action.  Stover v.

Martinez, 382 F.3d 1064, 1071 (10th Cir. 2004).   The law is clear that reporting workplace discrimination to the EEOC is protected behavior.  Anderson v. Coors Brewing Co., 181 F.3d 1171, 1178 (10th Cir. 1999); McCue v. State of Kansas, Dep't of Human Resources, 165 F.3d 784, 789 (10th Cir. 1999).  An employee may establish causation by showing that the adverse employment action occurred soon after the protected activity.  Annett v. University of Kansas, 371 F.3d 1233, 1239-40 (10th Cir. 2004); Burrus v. United Tel. Co. of Kansas, Inc., 683 F.2d 339, 343 (10th Cir. 1982).  "Unless there is a very close temporal proximity between the protected activity and the retaliatory conduct, the plaintiff must offer additional evidence to establish causation."  O'Neal v. Ferguson Constr. Co., 237 F.3d 1248, 1252 (10th Cir. 2001).

In her complaint, plaintiff sought "[b]ack pay for cheated Early Retirement Pensions [and] Quotes."  Dkt. # 1, at 2.  Plaintiff stated that there was "[r]acial discrimination in [t]ermination papers and cheating [q]uotes of [e]arly [r]etirement [p]ension due June 1, 2013."  Id.  However, the Court notes that Prudential was not plaintiff's employer and thus could not retaliate against plaintiff based on claims to the EEOC, OHRC, OSHA, or internal complaints to Avis prior to her termination.  However, even assuming that plaintiff could make a claim for retaliation based on Prudential's actions, the differing amounts were due to the cause of plaintiff's termination and not due to retaliation based on plaintiff's claims to any agency or Avis.  The numerous phone calls plaintiff placed to Prudential to uncover that information, though detailed in her attached documentation, fail to state a claim of retaliation.  Plaintiff's only allegation is that she filed a claim with the EEOC, OHRC, or OSHA and her pension benefit amount thereafter changed.  The documentation provided and relied upon by plaintiff demonstrates that plaintiff inquired numerous times about the change in the amount and was informed that the reason for the change was the cause

27

of plaintiff's termination.  Even construing plaintiff's complaint in the light most favorable to plaintiff, plaintiff has failed to state a claim upon which relief can be granted.

**IV.**

In plaintiff's response, plaintiff requested that she be allowed "time to find the right attorney to help [her] in this case."  Dkt. # 23, at 2.  However, the Court finds it would be fruitless to allow plaintiff additional time to search for an attorney.  It is noted that plaintiff filed this case pro se on June 4, 2013, fifteen months after Avis terminated her employment.  As of the date of her response, plaintiff had seventeen months to search for an attorney, and, plaintiff knew that, as of July 15, 2013, Clifton Baker, the attorney she contacted, was going to decline to represent her.  As of the date of this opinion and order, plaintiff has still apparently failed to find an attorney willing to represent her, and, in her response, plaintiff did not state the steps she was taking to find an attorney or how long she expected her search to last.  The Court finds that an additional period of time to find an attorney would be neither helpful nor necessary, and plaintiff's request for an unspecified amount of additional time to search for an attorney is denied.

However, if plaintiff believes that she can state a claim for race or age discrimination in conformance with the statutes and law relied upon herein, she may, within fifteen days of the date of this order, file an amended complaint solely as to those two claims.  As to plaintiff's claims against all individuals, as well as her claims of intentional infliction of emotional distress, retaliation, and discrimination based on her disabilities, as well as a possible claim of harassment based on her disability, the Court finds that there is no possibility that plaintiff could state a claim upon which relief can be granted and an additional period of time to amend her complaint would be fruitless.

**IT IS THEREFORE ORDERED** that defendant Avis Budget Car Rental, LLC's Motion to Dismiss Plaintiff's Claims and Brief in Support (Dkt. # 13) and Defendants Paul Dominy, Paula Gottes, Mary Jo Shannon, Debbie Hall, Kim Thorne, David Polen, and Debra Watkins' Motion to Dismiss Plaintiff's Claims and Brief in Support (Dkt. # 14) are **granted**.  All claims against all defendants are dismissed.

**IT IS FURTHER ORDERED** that plaintiff may, no later than **September 4, 2013**, file an amended complaint as to her claims for race and age discrimination if she can state a claim upon which relief can be granted.

**DATED** this 20th day of August, 2013.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE